USDC SCAN INDEX SHEET



TKL 4/25/05 12:50

3:05-CV-00555 FIVE NAVY SEALS V. ASSOCIATED PRESS

*15*

*DECL.*

Dockets.Justia.com

JAMES W. HUSTON (BAR NO. 115596)
DAVID C. DOYLE (BAR NO. 70690)
KRISTINA M. HOY (BAR NO. 220167)
CHARLES S. EVENDORFF (BAR NO. 187119)
MORRISON & FOERSTER LLP
3811 Valley Centre Drive, Suite 500
San Diego, California 92130-2332
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Plaintiffs
FOUR NAVY SEALS AND JANE DOE

FILED
05 APR 21 AM 11:59
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR NAVY SEALS AND JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATED PRESS, a New York corporation; SETH HETTENA, an individual; and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 05 CV 0555 JM (JMA)<br><br>**DECLARATION OF JAMES BELLOWS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**<br><br>Date: May 6, 2005<br>Time: 11:00 a.m.<br>Ctrm: 6<br>Judge: Jeffrey Miller |

I, James Bellows, hereby declare:

1. I have personal knowledge of the facts in this declaration and if called upon I could and would competently attest to them.

2. I have been working in media since approximately 1947. My experience in print media is wide-ranging and I have run a number of large newspapers. I worked as a copy and news editor at the *Atlanta Journal* from 1950 to 1957, managing editor for the *Miami News* from 1959 to 1961, editor of the *New York Herald Tribune* from 1961 to 1967, associate editor for the *Los Angeles Times* from 1964 to 1974, editor of the *Washington Star* from 1975 to 1978, editor of the *Los Angeles Herald-Examiner* from 1978 to 1981, and was a consultant for the *Los Angeles Daily News* in 1998.

3. I also have extensive experience in working with broadcast media. I was the managing editor for *Entertainment Tonight* from 1981 to 1983, executive editor for ABC News, *World News Tonight*, from 1983 to 1986, executive producer for *USA Today on TV* from 1988 to 1989, and vice president of editorial for the MediaNews Group from 1989 to 1990.

4. Likewise, I have worked with a number of Internet companies. I was editorial director of Prodigy from 1986 to 1988, Executive Editor of Excite from 1994 to 1997, and worked as a consultant for both Eguard.com and Gator.com in 1999.

5. Recently, in 2002, I published a book about my five decades of experience in the print and broadcast media entitled *The Last Editor*. *The Last Editor* is the subject of a PBS television documentary that has aired nationwide since the book was released in April 2002. In 2003, in New York, I was given the Clurman Award for mentoring journalists.

6. I have reviewed the article written by Seth Hettena dated December 3, 2004 ("the Article") for the AP, reviewed the photographs that were released on the newswire with the Article, and read the Declaration of Seth Hettena in Support of Motion to Dismiss and Strike ("Hettena Declaration") submitted in this action.

7. Journalists live by a set of ethical standards and professional practices. It is my opinion, based on my fifty plus years of experience, that Mr. Hettena and the AP have violated

these standards by publishing the photographs of individual SEALs that could put their lives in danger, as discussed below.

8. The Article states that the U.S. military had launched an investigation into the photographs accompanying the Article. The Hettena Declaration states that a follow up article written by Mr. Hettena reported that the Navy's initial assessment was that many of the photographs "were taken for legitimate intelligence gathering purposes and showed commandos using approved procedures." I also understand that none of the individuals in the pictures accompanying the Article have been charged with any crime.

9. Generally, the ethics and standards of care in journalism prohibit publishing the identifying characteristics, including photographs, of suspects unless they have been charged with a crime. That is because the "cat is out of the bag" once a person has been identified in connection with a crime, as occurred here. The SEALs appearing in the photographs accompanying the Article were not charged with a crime, but now people who have read the Article associate them with prisoner abuse.

10. Likewise, ethics and standards of care in journalism dictate that journalists do not disclose identifying details of a person who can be put in danger by the disclosure, whenever possible. Mr. Hettena followed this rule by not disclosing the identity of Jane Doe, the wife of a Navy SEAL. The Article notes that "[o]ut of safety concerns, the AP is not identifying the woman who posted the photos."

11. Mr. Hettena and the AP also appear to have understood that disclosing the identity of the SEALs by printing their photographs would put them in danger. The Article states that "[t]he Navy goes to great lengths to protect the identities and whereabouts of its 2400 SEALs—which stands for Navy, Sea, Air, Land—many of whom have classified counterterrorist missions around the globe. 'Some of these photos clearly depict faces and names of Naval Special Warfare personnel, which could put them or their families at risk [according to a Navy spokesman].'" Moreover, I have reviewed an article written by Mr. Hettena on September 29, 2004 entitled "Navy keeps tight lid on SEAL identities", which states that the Navy had refused a Freedom of Information Act request filed by the AP for the identities of different SEALs [who ***had*** been

charged with crimes] and that "[t]he military is usually loath to divulge details of the operations of its special forces, which are being used worldwide to fight terrorists." I also understand that Jane Doe informed Mr. Hettena that publishing photographs of the SEALs could put their lives in danger, and that she had been directed by the military to not even put her return address on letters she wrote to her husband because doing so could put them both in serious danger. Nonetheless, the AP published the photographs at issue clearly identifying the SEALs.

12. Mr. Hettena states in his Declaration that the Abu Ghraib scandal had made photographs relating to prisoner abuse "newsworthy." This statement does not help his cause because Mr. Hettena and the AP should have understood that printing photographs of SEALs in a story stating they could be the "earliest evidence of possible abuse of prisoners in Iraq" would guarantee wide coverage. This wide coverage would compound the danger to the SEALs, and should have made the AP and Mr. Hettena act more carefully, and wait until the SEALs were charged with a crime before associating their faces with prisoner abuse. Printing the story without accompanying photographs, or just the photographs not clearly showing the identities or faces of the SEALs, would have assured this result did not occur.

13. The Hettena Declaration also states that the AP has a policy to not "doctor" or "alter" news photographs. Hettena Declaration, at ¶ 25. The AP likely also has a policy, or should have a policy, not to print photographs that could put lives in danger, particularly when the people in the photographs have not been charged with a crime. As a result, if the AP was intent upon publishing the Article, the responsible and ethical course would have been for it to not print the photographs when running the Article. Then, if charges were brought against any of the individuals in the photographs, the AP could have run the photographs.

14. Alternatively, the AP could have run ***some*** of the photographs attached to the Hettena Declaration, but not ***all*** of them—namely the photographs that do not identify the individual SEALs. For instance, Exhibit A, pages 1, 12 and 13 to the Hettena Declaration, apparently show prisoners laying on the ground or in a truck but do ***not*** identify any SEALs. Likewise, Exhibit A, pages 10 and 11 to the Hettena Declaration, appear to show a man with blood running down his chest but, again, do ***not*** identify any SEALs. Any of these photographs

would "set the scene" for the story and adequately demonstrate the type of photographs found by Mr. Hettena. In contrast, and for example, Exhibit A, pages 5, 7 and 8 clearly depict SEALs. Given that they were not charged with a crime, Mr. Hettena reported that publishing their identifying details could put them in danger, and he had been warned by Jane Doe that these photographs could put them in danger, it was ethically irresponsible and a breach of Mr. Hettena and the AP's standard of care to publish these photographs.

15. Mr. Hettena notes that he "considered the facial expressions of the SEALs in the photos with hooded and bloodied prisoners to be a central part of their news value." Hettena Declaration, at ¶ 28. Given that none of the SEALs had been charged with a crime, and both the Navy and Jane Doe had told Mr. Hettena that identifying the SEALs could put them in danger, this is not a good enough reason to print these photographs. Instead, if intent upon publishing photographs with the story, the AP should have only published the ones that did not identify individuals. In fact, it appears that about half of the photographs attached to the Hettena Declaration do not identify any individuals, and a number of these photographs show "hooded and bloodied" prisoners. Moreover, had the AP just waited to publish the photographs that identify individuals until, or if, the SEALs were charged with a crime, they could have avoided putting them in danger for no reason.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on April 18, 2005.

James Bellows
James Bellows