USDC SCAN INDEX SHEET



TKL 4/25/05 12:52

3:05-CV-00555 FIVE NAVY SEALS V. ASSOCIATED PRESS

*16*

*DECL.*

Dockets.Justia.com

JAMES W. HUSTON (BAR NO. 115596)
DAVID C. DOYLE (BAR NO. 70690)
KRISTINA M. HOY (BAR NO. 220167)
CHARLES S. EVENDORFF (BAR NO. 187119)
MORRISON & FOERSTER LLP
3811 Valley Centre Drive, Suite 500
San Diego, California 92130-2332
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Plaintiffs
FOUR NAVY SEALS AND JANE DOE

FILED
05 APR 21 AM 1:59
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR NAVY SEALS AND JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATED PRESS, a New York corporation; SETH HETTENA, an individual; and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 05 CV 0555 JM (JMA)<br><br>**DECLARATION OF MACKUBIN THOMAS OWENS PH.D. IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**<br><br>Date: May 6, 2005<br>Time: 11:00 a.m.<br>Ctrm: 6<br>Judge: Jeffrey Miller |

I, Mackubin Thomas Owens, Ph.D. hereby declare:

1. I have personal knowledge of the facts contained herein and if called to testify regarding these facts, could so testify competently.

2. I am the associate dean of academics for electives and directed research and professor of national security affairs at the United States Naval War College in Newport, Rhode Island. My area of specialization is the planning of United States strategy and forces, especially Naval and power projection forces, the political economy of national security, national security organization, strategic geography, and American civil-military relations.

////

3. From 1990 to 1997, I was editor and chief of the *Quarterly Defense Journal Strategic Review* and adjunct professor of international relations at Boston University.

4. I am a contributing editor to *National Review* online, writing primarily on security affairs and the character of American republican government. My articles on national security issues have appeared in such publications as *International Security*, *Orbis*, *Armed Forces Journal*, *Joint Force Quarterly*, *The Public Interest*, *The Weekly Standard*, *Defence Analysis*, *United States Naval Institute Proceedings*, *Marine Corps Gazette*, *Comparative Strategy*, *National Review*, *The New York Times*, *The Los Angeles Times*, *The Jerusalem Post*, *St. Louis Lawyer*, and *The Washington Times*. I have had ten articles published in the *Wall Street Journal* over the past two years. I am co-editor of the text book, *Strategy in Force Planning*, now in its third edition. I am currently working on a book for the University Press of Kentucky tentatively titled, *Sword of Republican Empire: A History of U.S. Civil-Military Relations*.

5. I earned my Ph.D. in politics from the University of Dallas, an MA in economics from Oklahoma University, and a BA from the University of California at Santa Barbara.

6. Before joining the faculty of the War College, I served as national security advisor to Senator Bob Castin of Wisconsin, and Director of Legislative Affairs for the nuclear weapons program of the Department of Energy during the Reagan administration.

7. I am also a Marine Corps veteran of Viet Nam where as an infantry platoon commander in 1968 and 1969, I was wounded twice and awarded the Silver Star. I retired from the Marine Corps Reserves as a colonel in 1994. I have taught at the University of Rhode Island, the University of Dallas, Catholic University, and the Marine Corps School of Advance War Fighting (SAW). I have been a program officer for the Smith Richardson Foundation, senior visiting fellow at the Center for Naval Analysis, and a consultant to the Los Alamos National Laboratory, Headquarters Marine Corps, and J-5 Strategy, the Joint Staff.

8. In my current position, I am routinely called upon to analyze the conduct of the war on terror by the United States, the conduct of terrorists, the applicability of the laws of war, the Geneva Conventions, moral conduct, and the role of journalists.

////

9. I have been asked to review the articles in question published by Seth Hettena and the photographs that accompanied it which show the faces of Navy SEALs conducting operations in Iraq.

10. I have also reviewed three other articles published by defendant Seth Hettena of the Associated Press. The first article is dated September 29, 2004 and is titled, "Navy Keeps Tight Lid on SEAL Identities."

11. In that article, Hettena states that the Navy is keeping a tight lid on the identity of "seven of its elite SEAL commandos who have been charged with assaulting Iraqi prisoners." It is my understanding that the SEALs being discussed in this article are not the SEALs whose photographs were later published and are the subject of this lawsuit as it is my understanding they have, to this date, never been charged with anything. Thus, Hettena is clearly discussing two groups of people.

12. In the September 29 article, Navy Captain Raul Pedrozo, the Judge Advocate General for Navy Special Warfare Command in Coronado, denied a request by the AP for the identity of those SEALs who had been charged. He told them that U.S. law exempts the identity of members of "sensitive units" from disclosure.

13. That article indicates that the accused SEALs were members of "capturing units" taking part in sensitive operations in Iraq, often at the direction of the CIA (according to the civilian defense attorney quoted by Hettena who is representing one of the SEALs charged in the case).

14. In that article, Hettena quotes Captain Pedrozo as saying, "Names of the SEALs who have been charged would be provided if and when an Article 32 hearing – the military equivalent of a grand jury hearing – is convened." Releasing the names before then would constitute an "unwarranted invasion of privacy and would deprive the accused of the right to a fair trial," he said.

15. The photographs of the SEALs in the lawsuit now filed are not photographs of those SEALs Hettena was trying to identify through a Freedom of Information Act request. Yet

////

he indicates that the photos in question may be "the earliest evidence of possible abuse of prisoners in Iraq."

16. In the photographs at issue in this case, the article cites two experts in an attempt to imply that there are criminal violations apparent in the photographs. Mr. Hettena cites Gary Solis, a former Marine Corps prosecutor who said only that the behavior was "not necessarily a crime."

17. The other expert consulted by Mr. Hettena, John Hutson, a retired Real Admiral, told Hettena the photographs "suggested possible Geneva Convention violations. Those international laws prohibit souvenir photos of prisoners of war. It's pretty obvious that these pictures were taken largely as war trophies."

18. I disagree for many reasons. The photos in question, those taken by Mr. Hettena many of which were published throughout the country and in the Arab press, appear to me, based on my combat experience, to show only special operations personnel conducting capture operations in Iraq. As was made clear by Hettena's subsequent article two days later, December 6, 2004, the preliminary findings of a military inquiry suggest that some of the recently published photographs of Navy Special Forces "capturing prisoners in Iraq were taken for legitimate intelligence gathering purposes and showed commandos using approved procedures."

19. However the Geneva Conventions do not even apply to the conduct in question. The Geneva Conventions are intended to preserve prisoners of war and protect them from inappropriate interrogation or abuse. Those who are protected as prisoners of war are by definition members of uniformed armed forces of a signatory country that are engaged in armed warfare in accordance with the expectations of the Conventions, specifically in uniform, with a command structure, carrying arms openly, and not acting as terrorists or guerillas.

20. Moreover, the Geneva Conventions do not specifically preclude taking of photographs of your own operations, nor do they prohibit taking photographs of prisoners. They prohibit "souvenirs" but make no mention of photographs. The typical application of the prohibition against souvenirs would be the personal taking of captured weapons or even a bathroom fixture from Saddam Hussein's palace.

21. In Hettena's follow up article of December 6, he comments that the photos "appear" to show Navy SEALs sitting or lying on top of hooded and handcuffed prisoners in the back of a pick-up truck.

22. Hettena apparently believes that placing someone in a pick-up truck and restraining them there is abuse. Perhaps another equally likely possibility is that these terrorists had been recently captured, had been placed in an Humvee for transportation to a detention facility, and were being so transported. As can be clearly seen from the photographs, the prisoners' feet are not bound. If the feet are not bound, it is very possible that the captives could kick the SEALs forcing them to fall off the vehicle, or could stand up and attempt to jump off a moving vehicle themselves. Thus it seems that an equally reasonable interpretation of the photos is that the SEALs were preventing the terrorists/insurgents from either striking back or escaping.

23. In looking at the photographs taken by Mr. Hettena that are attached to his declaration, I seen none that evidence abuse. The fact that an insurgent or terrorist is bleeding does not lead one to the conclusion of abuse, but rather to that of resistance.

24. The identity of Navy SEALs involved in covert operations, particularly those operating with intelligence agencies (which must have been Hettena's assumption since it was in his earlier article and also was in his declaration that that was the information he received from one of the wives) is sensitive. Disclosure of their identities without a criminal charge or certainty of what was being portrayed is likely to put the SEALs and their families at risk. Mr. Hettena was told that very thing prior to publishing his article.

25. The identity of covert operators, which include military personnel operating with intelligence units, is protected by federal law. The government has a compelling interest in protecting the identity of those who are at the most dangerous point of the war on terror. These are the men who are going into the houses of terrorists and insurgents and capturing them. Those

////

////

////

////

terrorists and insurgents would like nothing more than to identify the men whom they fear the most and retaliate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Newport, Rhode Island, on April 20, 2005.

Mackubin Thomas Owens, Ph.D.