USDC SCAN INDEX SHEET

Five Navy Seals, et al v. Associated Press, et al Doc. 1

TKL 4/25/05 12:53

3:05-CV-00555 FIVE NAVY SEALS V. ASSOCIATED PRESS

*17*

*DECL.*

Dockets.Justia.com

JAMES W. HUSTON (BAR NO. 115596)
DAVID C. DOYLE (BAR NO. 70690)
KRISTINA M. HOY (BAR NO. 220167)
CHARLES S. EVENDORFF (BAR NO. 187119)
MORRISON & FOERSTER LLP
3811 Valley Centre Drive, Suite 500
San Diego, California 92130-2332
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Plaintiffs
FOUR NAVY SEALS AND JANE DOE

FILED
05 APR 21 AM 1:59
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FOUR NAVY SEALS AND JANE DOE,

Plaintiffs,

v.

ASSOCIATED PRESS, a New York corporation; SETH HETTENA, an individual; and Does 1 through 50, inclusive,

Defendants.

Case No. 05 CV 0555 JM (JMA)

**DECLARATION OF JANE DOE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**

Date: May 6, 2005
Time: 11:00 a.m.
Ctrm: 6
Judge: Jeffrey Miller

I, Jane Doe, declare:

1. I am a plaintiff in this action. I have personal knowledge of the facts in this Declaration and if called upon I could and would competently attest to them.

2. Approximately two years ago I signed up for an account on smugmug.com. When I signed up, I chose a password and believed that any photographs I stored on the site were password protected and could only be viewed by people to whom I gave permission. I would never store photographs on a site that was not password protected.

3. I have reviewed the article written by Seth Hettena dated December 3, 2004 ("the Article") for the AP, read the Declaration of Seth Hettena in Support of Motion to Dismiss and Strike ("Hettena Declaration") submitted in this action, and reviewed the photographs that were attached to the Hettena Declaration. I uploaded those photographs, and others, on my personal smugmug.com webpage over a period of time in approximately the fall of 2003. I stored the photographs in large packages, without organizing them, and only to store them until I had time to organize them. I did not tell many people, perhaps only my parents, that these photographs were stored on my personal smugmug.com page. Again, these photographs were password protected, and I believed they could not be accessed by the public.

4. Additionally, the SEALs in the photographs did not know these photographs were uploaded on smugmug.com, or anywhere on the Internet. None of the SEALs gave permission to post the photographs, and a number of the SEALs who are plaintiffs in this action were shocked when they learned a reporter had found the photographs on the Internet. I feel awful about this, but the fact is that I thought nobody could access these photographs because the site was password protected.

5. I was stunned to find out that a search on www.google.com may have been able to locate one of the photographs in my private collection based upon a word used to caption a group of photographs. I did not "index" the photographs to Google or otherwise take any action that would help anyone find the photographs on the Internet because I wanted them to remain private. In fact, there was nothing on the smugmug.com homepage that would show that my photographs were stored there, and there was no way to search and find the photographs on the smugmug.com

website, except for apparently guessing a word used to caption a group of photographs. At the time, I did not believe that searching for any words on smugmug.com or google.com would allow anyone to see my photographs without a password.

6. On November 18, 2004, I arrived home and found a note from Mr. Hettena. In the note, Mr. Hettena said that he had found "a series of photographs taken by SEALs in Iraq." He noted that the photographs were found on a "personal web page of [mine] at smugmug.com," and asked me to call him as soon as I could. Obviously, I was very upset by this note, the fact that Mr. Hettena had been on my personal webpage and found these photographs, and that he had somehow located my home address. A true and correct copy of the note is attached as Exhibit 1 to this Declaration.

7. I called Mr. Hettena almost immediately after reading the note. I asked him how he got my address, and he said "we're the press, we can get anybody's address." He then asked to speak to my husband. I told Mr. Hettena that he should not have been on my personal webpage, the photographs were private and password protected, and that he did not have permission to use them. I told Mr. Hettena that publishing these photographs could put the people in the photographs in extreme danger, and that I had been told not even to put my return address on letters I wrote to my husband because doing so could put us both in serious danger. Mr. Hettena then indicated that he had reviewed all of the photographs on my personal webpage, but did not say he intended to publish any of them. Our conversation was very short. I told him to stay away from me, my house, and my webpage.

8. On December 3, 2004, Mr. Hettena published a story about the photographs, falsely asserting that they might show abuse of prisoners, and published photographs clearly showing a number of SEALs on active duty. Some of the SEALs pictured in the photographs were in Iraq at the time the story ran. I was terrified that some of these SEALs would be killed as a result of the story running because I knew they were often on covert missions which could be jeopardized if their identities became known. I felt awful, and still feel awful, that Mr. Hettena located these photographs on my personal webpage and published them even though I told him not to, and he

even states in his story, that the SEALs pictured could be put in danger by having their identities disclosed.

9. I was furious, and called an AP editor in Los Angeles to tell him that I never gave Mr. Hettena, or the AP, any permission to use these photographs and that publishing them could get innocent people killed. I also said that the "facts" stated in the Article were incorrect. The editor said the AP did nothing wrong, did not check facts, and that it trusted its reporters. He would not listen to me or pull the photographs.

10. A few days later, Mr. Hettena again left a note outside the door to my house. The note said that his "colleague passed along that [I] was upset about the story." It said "I want you to know that I argued to keep your name out of the story -- even though you did not ask this of me -- out of concerns for your personal safety." A true and correct copy of this note is attached as Exhibit 2 to this Declaration.

11. Frankly, I was shocked that anybody would even consider printing my name in the story, or would run the story in the first place. As the wife of a Navy SEAL, it was obvious to me that the photographs showed nothing but the normal capture of terrorists. It was shocking to me that the AP would publish these photographs, and consider publishing my name, even though I had told Mr. Hettena that doing so could get people killed, and he recognized as much in the Article and by not publishing my name.

12. Since the Article ran, and particularly since people have been writing into websites where the pictures are posted stating that the SEALs in the photographs should be killed, I have been extremely frightened for my safety.

///

///

///

///

///

///

///

13. A number of the statements in the Article are false. The Article states that Mr. Hettena found the photographs on a "commercial photo-sharing Web site." In fact, the photographs were taken from my personal webpage without notice or permission, and in violation of the smugmug.com user agreement. The Article also states that I told "the AP they were on the camera [my] husband brought back from Iraq. [And that I] said [my] husband has returned to Iraq." I never said either of these things, and my husband did not bring the photographs back in a camera from Iraq.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in San Diego California on April 22 2005.

Jane Doe