USDC SCAN INDEX SHEET

Five Navy Seals, et al v. Associated Press, et al

Doc. 2

TKL 5/2/05 8:58

3:05-CV-00555 FIVE NAVY SEALS V. ASSOCIATED PRESS

*27*

*RPLYOPPM.*

Dockets.Justia.com

Robert G. Steiner, State Bar No. 027684
Gregory D. Roper, State Bar No. 087019
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Facsimile No.: 619.232.8311

David A. Schulz, (pro hac vice pending)
Seth D. Berlin
Audrey Critchley, State Bar No. 228119
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
230 Park Avenue, Suite 1160
New York, New York 10169
Telephone No.: 212.850.6100
Facsimile No.: 212.850.6299

Attorneys for DEFENDANTS

FILED
05 APR 29 PM 12:42
BY: DEPUTY

ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR NAVY SEALS AND JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATED PRESS, a New York Corporation; SETH HETTENA, an individual; and Does 1 through 50, inclusive,<br><br>Defendants. | Case No. 05 CV 0555 JM (JMA)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND TO STRIKE**<br><br>Date: May 6, 2005<br>Time: 11:00 a.m.<br>Ctrm.: 6<br><br>Hon. Jeffrey T. Miller<br><br>Complaint filed: March 21, 2005 |

# TABLE OF CONTENTS

**Page**

I. THE ANTI SLAPP LAW BARS THE STATE LAW CLAIMS ........ 1

II. PLAINTIFFS HAVE NO CLAIM FOR INVASION OF PRIVACY ........ 2

A. AP Disclosed No "Private Fact" ........ 2

B. AP Invaded No Private Space ........ 4

C. AP Engaged in No Outrageous Conduct ........ 5

D. The Existence of the Photos and the Navy Investigation Were Newsworthy ........ 7

E. The First Amendment Bars Plaintiffs' Privacy Claims ........ 9

III. THE OPPOSITION CONFIRMS THAT PLAINTIFFS HAVE NO CLAIM FOR COPYRIGHT INFRINGEMENT ........ 9

## PRELIMINARY STATEMENT

The Opposition confirms that the privacy claims should be stricken and the Complaint dismissed. Plaintiffs have no answer to the plain language of California's Anti-SLAPP law that directly governs their privacy claims, or the Ninth Circuit authority confirming that this state law applies in federal court under exactly these circumstances. Nor do they remotely meet their Anti-SLAPP law burden to present admissible evidence showing a probability they can succeed.

The photographs AP published were in the public domain, available to the whole world on an Internet webpage. Plaintiffs do not, and cannot, deny this truth. They therefore have no privacy claims against AP. Plaintiffs' copyright claim is equally baseless-improperly pled and barred by the fair use doctrine, as a matter of law, on the facts alleged. This misdirected lawsuit seeking to punish AP for reporting the news should be terminated at the very outset.

## ARGUMENT

### I.

### <u>THE ANTI SLAPP LAW BARS THE STATE LAW CLAIMS</u>

The anti-SLAPP law unambiguously applies because plaintiffs challenge AP's reporting on a public issue. (AP Mem. 15-16.) Plaintiffs resist this conclusion by claiming they do not seek to challenge AP's reporting, just its failure to edit out their identities when the photos were published. (Opp. 17.) The California Court of Appeal in *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629 (2001) ("*M.G.*"), rejected just this approach to the SLAPP law: "Although plaintiffs try to characterize the 'public issue' involved as being limited to the narrow question of the identity of the molestation victims, that definition is too restrictive." The article in *M.G.* addressed the broader topic of child molestation, and because that was an issue of "public interest" the court said the law applied. *Id.* Plaintiffs were not permitted to avoid the SLAPP law by challenging only those elements of the article they contended not to be of public concern. So also here.

Nor does *Condit v. National Enquirer*, 248 F. Supp. 2d 945 (E.D. Cal. 2002) (Opp. 17-19), support plaintiffs' approach. That case found that a story on whether Carolyn Condit verbally attacked Chandra Levy shortly before her death did not involve the type of public issue protected by the SLAPP law. The case only confirms by contrast that the law applies to AP's discussion of

a high-level Navy investigation into conduct of officers on duty. *See, e.g.*, Cal. Code Civ. Proc. § 425.16(e)(2) (law covers reporting on matters "under consideration by a public body"). *Condit* also was decided *before* the California Supreme Court issued a trio of decisions affirming that "the critical point" under the anti-SLAPP law is whether a cause of action is "based on an act in furtherance of the defendant's right of petition or free speech."[1] Plainly, plaintiffs' claims are "based on" AP's exercise of free speech rights. The anti-SLAPP law directly applies.

Unable to meet the evidentiary burden imposed by the law, plaintiffs claim the burden-shifting provisions of the anti-SLAPP law are procedural and do not apply in federal court. (Opp. 4.) Relying on *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999), the Opposition simply contends that the Ninth Circuit did not mean what it said in holding-repeatedly-that a plaintiff must indeed bear the statutory burden of demonstrating a probability of success whenever a SLAPP motion is properly presented in federal court.[2] Plaintiffs did not meet this burden, and the Complaint should therefore be stricken.

## II.

## PLAINTIFFS HAVE NO CLAIM FOR INVASION OF PRIVACY

### A. AP Disclosed No "Private Fact"

To assert a privacy claim, common law or constitutional, plaintiffs must first establish the publication of a *private* fact. (AP Mem. 7-8.) They fail to meet this threshold obligation.

1. The photos were in the public domain, available freely to anyone on the Internet. (Hettena Dec. ¶¶ 9-13; Gitnick Dec. ¶¶ 3-6.) Plaintiffs cannot dispute that information posted on the Internet is not "private," as a matter of law, so they attempt to portray their photos as having been located only on a "password-protected website." (Opp. 6.) The artfully drafted declarations from their two witnesses with knowledge confirm just the opposite. Jane Doe says only that she

---

[1] *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). *See also Navallier v. Sletten*, 29 Cal. 4th 82 (2002) (same); *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) (same).

[2] *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971, 972 (9th Cir. 1999) (once defendant makes prima facie showing the SLAPP law applies, "[t]he burden then shifts to the SLAPP plaintiff to establish by [a] 'probability [ ] that the [SLAPP] plaintiff will prevail on the claim'" both factually and legally); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (same); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (same). *See also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1098 (C.D. Cal. 2004) (same, expressly rejecting *Rogers*).

"chose a password" in opening her user account and "believed" the entire site to be password protected. (Doe Dec. ¶ 2.) As the web site makes clear, the log-on password selected to open an account protects only the account information (*e.g.*, credit card numbers), not the photo galleries. (Berlin Dec. ¶¶ 5-7.) Jane Doe says nothing about creating a password to protect her photo galleries, checking a box to prevent her photos from being searchable through Google, selecting a "block right-click option" to prevent the photos from being downloaded, or removing the "order prints" button to stop sales of the photos by the website. All of these protections *could* easily have been secured (Berlin Dec. ¶¶ 8-11); none were.

The MacAskill Declaration is similarly notable for what it does not say. The CEO of the website used by Jane Doe says nothing to establish either that her photos were indeed password protected, or that AP violated any of the site's Terms of Use – two of plaintiffs' points where he should have direct knowledge. The CEO does confirm, however, that others "besides Jane Doe's family" could indeed view the photos (¶ 2), and restrictions he imposes on subscribers to the website make clear that this is precisely as intended. The site is *supposed* to be viewed by the public, so only photos acceptable "in a public museum where minors visit" may be posted. (Schulz Dec., Ex. D at 3, Terms of Use, "Nudity".)

As affirmed by two witnesses who visited the website, the photos posted by Jane Doe were indeed accessible, like "in a public museum." (Hettena Dec. ¶¶ 9-12, 18; Gitnick Dec. ¶¶ 4-5.) The photos thus are not private as a matter of law, because "any user" could have "stumbled upon" them. *J.S. ex rel. H.S. v. Bethlehem Area Sch. Dist.*, 757 A.2d 412, 425 (Pa. Commw. 2000). This conclusion does not change just because Hettena referred to the photos as being on a "personal" webpage—many individuals have "personal" homepages meant to be viewed by the public. Indeed, there is a universe of personal "weblogs" intended to be viewed by the general public. "Personal" does not mean "private," and photos on the Internet are public as a matter of law.

2. Plaintiffs argue that a privacy claim may still be asserted if the photographs were not widely viewed, but the cases they cite are completely inapposite. (Opp. 7.) Plaintiffs rely upon *M.G.* and *Times-Mirror Co. v. Superior Court*, 198 Cal. App. 3d 1420 (4th Dist. 1988)

("*Times-Mirror*"), cases they say are "directly on point" but "ignored" by AP. (Opp. 3.) Neither case has any proper application, because neither involved information in the public domain. Each case deals with a circumstance where a private fact was known to a limited group, but was *otherwise* unavailable to the general public.[3] The cases have no proper application to information generally available to anyone on the world-wide web. Courts repeatedly have held that information posted on the Internet is no longer "private," as a matter of law. (AP Mem. 12.)

3. The California constitution does not independently allow plaintiffs to proceed without a truly "private fact." As plaintiffs recognize, a "legally protected privacy interest" is still a threshold element of a constitutional claim, just as at common law. (Opp. 12 n.18.) Plaintiffs have demonstrated no such privacy interest. *See also Vo v. City of Garden Grove*, 115 Cal. App. 4th 425, 448 (2004) (ordinance requiring cybercafés to install video surveillance does not violate constitutional privacy, in part, because "[a] person's physical features are not 'confidential'").

4. That the photos depict the official actions of active duty servicemen, not any "private fact," further defeats the privacy claim. (AP Mem. 8.) Plaintiffs have no case support, but reason that the law cannot permit the press "carte blanche to publish the identities of covert forces with impunity." (Opp. 7.) AP argues for no such right. The law, however, expressly permits AP to publish true public domain information in connection with news about a Navy investigation into the official actions of servicemen on duty. (AP Mem. 10-11.)

**B. AP Invaded No Private Space**

1. Just as unprotected information on the Internet is not "private," there can be no "objectively reasonable" expectation of privacy for items posted on the Internet. (AP Mem. 11-12.) Courts repeatedly have so held. *See* Mitchell Waldman, Annotation, *Expectation of Privacy in Internet Communications*, 92 A.L.R. 5th 15 (2005) ("no expectation of privacy with regard to Internet website communications"). Plaintiffs' descriptions of cases supposedly refuting this point (Opp. 13-14 & n.21) are wildly imprecise; the cases do not even address the question.

---

[3] *M.G.* involved a team photo that was only in possession of team members before being given to a magazine; *Times-Mirror* involved a person's name that was known only to the police, and a few close friends and family members, before publication of a news report.

For example, *IDX Sup. Corp. v. Epic Sys Corp.*, 165 F. Supp. 2d 812 (W.D. Wis. 2001), is described as holding that a website user "may have a reasonable expectation of privacy in information stored there." (Opp. 13.) The case actually says nothing about expectations of personal privacy, but held that a trade secret could still be protected by its true owner even though a third-party had briefly posted it on a webpage. Plaintiffs' other cases are equally off-point.[4]

Plaintiffs have no answer to the legal bar that exists to their intrusion claim if the photos were available on the Internet, so they question the veracity of Mr. Hettena's testimony establishing they were. (Opp. n.23.) The only evidence offered to contradict his sworn statement, however, is Jane Doe's erroneous "belief" that the site was password protected. It was not. (Berlin Dec. ¶ 16; Gitnick Dec. ¶¶ 4-5; Hettena Dec. ¶ ¶ 11-18.)

2. The website's "Terms of Use" do not create any other privacy right for Jane Doe. AP was not bound by them, like account holders such as Jane Doe, because visitors to a gallery are not required to express agreement to the Terms of Use. (Berlin Dec. ¶ 13-15.) And, even if the Terms of Use somehow prohibited Hettena's conduct, as a matter of contract law, any agreement would have run between Mr. Hettena and smugmug.com, not Ms. Doe. The Terms of Use place responsibility "for maintaining the confidentiality of your account" on the user – *i.e.*, Ms. Doe – and nowhere limit public access to the site.

## C. AP Engaged in No Outrageous Conduct

1. Plaintiffs do not deny that AP's actions were for the *purpose* of reporting news. Its conduct was therefore not sufficiently outrageous to support a claim for intrusion.[5] This is

---

[4] *See Creative Computing v. Getloaded.com, LLC*, 386 F.3d 930, 932 (9th Cir. 2004) (allowing claim where defendant "hacked into the code Creative used to operate its website" and paid one of plaintiff's employees to access plaintiff's customer lists); *United States v. Geibel*, 369 F.3d 682, 690-91 (2d Cir. 2003) (in analyzing whether "remote tippees" were part of a broad conspiracy to trade securities on inside information, examining "concealed and surreptitious" communications between insider and direct coconspirators in chatrooms); *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 21 (1st Cir. 2003) (holding that visitors to drug company websites did not thereby consent to software vendor's "collection of personal information" by intercepting their communications with the drug companies).

[5] (AP Mem. 14.) Plaintiffs say AP miscited *Ross* and *Price* because they involve intentional infliction claims. The "extreme and outrageous conduct" element of intentional infliction requires a showing analogous to the "offensive" conduct required for a privacy claim. *E.g.*, *Tompkins v. Cyr*, 995 F. Supp. 664, 676 (N.D. Tex. 1998) (both intentional infliction and invasion of privacy require proof of "outrageous or offensive" behavior), *rev'd in part on other grounds*, 202 F.3d 770 (2000); *Conant v. Dobbins*, 2001 WL 1250271, at *3 (Ariz. May 28, 2001) (statements "not highly offensive" also not "extreme or outrageous").

particularly true because AP violated no law in obtaining the photos or publishing them. Without case authority, again, plaintiffs suggest that AP may "arguably" have violated 50 U.S.C. § 421 by publishing the photos. (Opp. 15.) The claim is preposterous. Section 421 criminalizes the disclosure of the identity of a covert agent by someone outside the government *only* if the disclosure is part "of a pattern of activities intended to identify and expose covert agents." 50 U.S.C. § 421(c). Even if the term "covert agent" could be construed so broadly as to cover uniformed soldiers acting openly in the field of combat, publication of photographs in a news report on the conduct of those soldiers does not remotely fall within the terms of Section 421. *See* S. Rep. No. 97-201, 97th Cong., 1st Sess., *reprinted in* 1982 U.S. Code Cong. & Ad. News 145, 160-61 (Act applies only to those "who make it their business to ferret out and publish the identities of agents" and "does not affect the First Amendment rights of those who disclose the identities of agents as an integral part of another enterprise such as news media reporting of intelligence failures or abuses"). Tellingly, the Navy itself has never suggested that AP did anything improper or illegal in publishing the photos. (Hettena Dec. ¶ 30.)

2. Plaintiffs are equally incorrect in accusing AP of unethical conduct. They describe an "ethical standard" against disclosing the identity of someone "not charged with a crime" or "who could be put in danger" – a supposed standard conveniently conforming to plaintiffs' particular theory of AP's misconduct. If it actually existed, this mythical standard would have precluded publication of the Abu Ghraib abuse photos,[6] the Rodney King beating videotape,[7] and Kent State shooting photographs, to name just a few, as each involved photos of government agents at a time when they were "not charged with a crime." Plaintiffs' imagined standard would also have been violated by every one of the thousands of newspapers editors and broadcast news directors around the country who independently made the editorial decision to publish the images

---

[6] Lynndie England became the center of intense national debate when the Abu Ghraib photos were published before she was charged with any crime. *See* Gail Gibson, *Md. Reservist Charged In Iraqi Prisoner Abuse*, Balt. Sun, May 8, 2004, at 1A (first charged with crime); *Photos Show U.S. Troops Apparently Abusing Iraqis*, L.A. Times, Apr. 29, 2004, at A8 (discussing photos).

[7] The Rodney King videotape was broadcast before any police were accused of misconduct. *See* Faye Fiore & Philipp Gollner, *Video Showing Beating By L.A. Officers Investigated*, L.A. Times, Mar. 5, 1991, at A28; Leslie Berger & Tracy Wood, *At Least 4 Officers Indicted In Beating*, L.A. Times, Mar. 15, 1991, at A1.

of plaintiffs unaltered. Obviously, no such standard exists, but even if it did the violation of an ethical standard would not give rise to a cause of action by plaintiffs. *Sheetz v. The Morning Call, Inc.*, 747 F. Supp. 1515, 1533 (E.D. Pa. 1990) ("[w]ere this court one of manners or ethics, it might well reprove the defendants, because it is one of law, it cannot").[8]

3. The Opposition finally argues that AP "could have" covered the story by altering the photos and therefore had a legal duty to do so. This position, too, is unsupported in fact or law. As a matter of fact, the story would not have been the same without the expressions of the SEALs. (Hettena Dec. 28.) As in *Gilbert v. Medical Economics*, 665 F.2d 305, 308 (10th Cir. 1981), the images were "relevant to a newsworthy topic" and "strengthen the impact and credibility" of the reporting. As a matter of law, "courts do not, and constitutionally could not, sit as superior editors of the press." *Shulman v. Group W Productions*, 18 Cal. 4th 200, 229 (1998).[9] Nor should they here. AP's longstanding policy that it will not alter news photos exists to serve an important goal: "fidelity to the truth." (Gitnick Dec. ¶ 10.) The policy is "essential to maintaining AP's credibility and reputation as a reliable source of the news" (*Id.*) Adhering to this policy was not outrageous as a matter of law.

**D. The Existence of the Photos and the Navy Investigation Were Newsworthy**

The images of SEALs with Iraqi prisoners were indisputably newsworthy.[10] Plaintiffs again cite M.G. and Times Mirror, but their analysis of "newsworthiness" is also inapposite. The

---

[8] To the extent that the SEAL plaintiffs' principal objection appears to be that defendants' conduct subjected them to risk of physical harm and fears that exceeded what they already faced as SEALs on "dangerous counterterrorism missions in Iraq" (Opp. 9), the First Amendment similarly prohibits recovery because defendants are unable to satisfy each of the three requirements established by the Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)—in particular, that defendants' publication must have been "*directed to* inciting or producing *imminent* lawless action" to be actionable. (Emphasis added.)

[9] *See also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (First Amendment restricts "measures that would allow government to insinuate itself into the editorial rooms of this Nation's press") (White, J., concurring); *Med Labs Mgmt. Consultants v. Am. Broad. Co.*, 306 F.3d 806, 825 (9th Cir. 2002) (the decision to include information "was an editorial decision protected by the First Amendment"); *Ross v. Midwest Comm., Inc.*, 870 F.2d 271, 275 (5th Cir. 1989) (judges "acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively").

[10] Plaintiffs cite *Times-Mirror*, 198 Cal. App. 3d at 1428-29, as suggesting that the issue of newsworthiness is for the jury (Opp. 8 & n.10), but that holding did not "survive the test established by the state Supreme Court in *Shulman*." SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS, §12.4.5.2.1 n.212 (2004). *See Shulman*, 18 Cal. 4th at 213 (holding allegedly private information to be "newsworthy as a matter of law"); *Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1087 (1999) (same).

M.G. case involved a story about "adult coaches who sexually molest youths playing team sports." It featured a discussion of one coach, Norm Watson, who pleaded guilty to molesting five children. 89 Cal. App. 4th at 626. A photograph of one team Watson coached over the years accompanied the story, and ten of the 18 people in the photograph sued for invasion of privacy. The court found that the identities of plaintiffs might not be newsworthy because the story was *not about* any of them, but rather concerned child molestation in youth sports generally. The specific photo was merely illustrative, *i.e.*, intended to show that "any child who plays sports could be placed in harms way." Here, in stark and direct contrast, the photos *were* the story. The *existence* of the photos was newsworthy. Unlike *M.G.*, the photos were not used to illustrate a general theme, such as the realities of war. And, unlike the child athletes who took no action inviting public scrutiny, plaintiffs here are soldiers whose official conduct became the subject of a Navy investigation. Identifying actors involved in newsworthy events is not an invasion of privacy.[11]

Plaintiffs' reliance on *Times-Mirror* is equally misplaced because it too involved a plaintiff whose own actions had nothing to do with the news report. In that case, the court said publishing the name of a mere witness to a crime might not be newsworthy. The plaintiff, as in *M.G.*, was involuntarily thrust into a news event, and publication of her name did not further the story in any way. Here, by contrast, plaintiffs are public servants, photographed on duty, whose conduct and appearance was an integral part of the news story. *See, e.g., Pasadena Star-News v. Superior Court*, 203 Cal. App. 3d 131, 134 (1988) (no liability where plaintiff "was not merely the involuntary victim" but took actions that "created the newsworthy event"); *see also Restatement (Second) of Torts* § 652d, cmt. f.

Finally, unlike both *M.G.* and *Times-Mirror*, the journalistic determination of the newsworthiness of plaintiffs' images was not made by a single set of editors. The AP did not itself publish the photos "worldwide" as alleged. (Am. Compl., Intro.) AP is a mutual news

[11] Even when private citizens are involved in newsworthy events, their identification does not constitute an invasion of privacy. *See, e.g., Shulman*, 18 Cal. 4th at 251 (appearance of victim "extricated from [an] overturned car, placed in [a] helicopter, and transported to the hospital [was] of legitimate public concern"); *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 133 (1st Cir. 2000) (identifying truck driver who tested positive for drugs was not an invasion of privacy: "defendants were entitled to illustrate their messages about highway safety and regulation with new information about the individual subject of their report").

cooperative that simply shares news with newspapers, broadcasters and other news outlets for their possible use. (Hettena Dec. ¶ 3.) Thousands of independent newspaper and broadcast editors each made their own news judgment about whether to publish the photos without alteration. *Their* independent judgments confirm beyond peradventure the news value of the photos.

**E. The First Amendment Bars Plaintiffs' Privacy Claims**

Plaintiffs misstate the law in arguing that the First Amendment protects the publication of truthful, newsworthy information *only* when it comes from official court records. (Opp. 11 & n. 16.) Plaintiffs cite *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979), but *Smith* itself was not a court records case – it involved information the media obtained by monitoring a police radio. The Court held: "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order." *Id.* Several Supreme Court cases not involving court records confirm this proposition.[12] This principle, too, bars plaintiffs' privacy claims aimed at AP's truthful, accurate reporting.

**III.**

**<u>THE OPPOSITION CONFIRMS THAT PLAINTIFFS HAVE NO CLAIM FOR COPYRIGHT INFRINGEMENT</u>**

Plaintiffs do not even attempt to claim compliance with Rule 8. They argue instead that they should be excused from pleading "specific identifying information" about the copyrighted work because this is "a case about the disclosure of identities." (Opp. 20 n.33.) That Plaintiffs chose to combine a contrived copyright claim with ill-founded privacy claims does not abrogate their pleading requirements. By failing to identify which registered works AP allegedly infringed, the Complaint gives insufficient notice for AP to put forth a defense.[13]

---

[12] *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 527-28, 533-34 (2001) (First Amendment protects broadcast of tape of cellular phone conversation between union president and its chief negotiator); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam) (First Amendment forbids prior restraint of "Pentagon Papers" report); *South Coast Newspapers, Inc. v. Superior Court*, 85 Cal. App. 4th 866, 868-70, 874 (2000) (First Amendment forbids prior restraint of images of juvenile criminal defendants "regardless of the source from which [the] Media obtained" them).

[13] *See, e.g.*, *Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942) (failure to identify which of six books was infringed held inadequate); *Sharp v. Patterson*, 2004 WL 2480426, at *14 (S.D.N.Y. Nov. 3, 2004) (failure to identify which of

AP also properly raised the issue of fair use on a motion to dismiss. *See* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2005); *see also* AP Mem. 19. Plaintiffs' response to AP's demonstration of fair use: (1) mischaracterizes news reporting as per se commercial when it is not;[14] (2) says a news use is never transformative, when the Ninth Circuit says the opposite;[15] (3) wrongly claims there is "no authority" that posting to the Internet amounts to publication, but ignores that *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) (AP Mem. 20-21), holds just that;[16] (4) insists that too much of each photo was used, but omits that courts regularly permit copying of "the entire image to allow users to recognize the image;"[17] and (5) argues that their photographs have value, but overlooks that AP's use can have no effect on any potential value because plaintiffs do not intend to market the photographs.[18] The Opposition fails to rebut AP's showing of fair use. The copyright claim should be dismissed.

**CONCLUSION**

For each of the foregoing reasons, the Court should grant plaintiffs' motion in its entirety.

DATED: April 29, 2005 Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

By: ______________________
Robert G. Steiner
Attorneys for DEFENDANTS

---

69 certificates was infringed held inadequate).

[14] *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 (1994) (commerciality does not presumptively negate fair use because "nearly all of the illustrative uses listed in . . . § 107, including news reporting, comment, [and] criticism," are "activities are generally conducted for profit in this country.").

[15] *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003). *See also Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *3 (S.D.N.Y. Apr. 6, 2000) (use of photograph to comment on what is depicted "weighs heavily in favor of a finding of fair use").

[16] The concept of "publication" set forth in the Copyright Act, 17 U.S.C. § 101, is applicable to both the damages and fair use provisions of the Copyright Act, *id.* §§ 107, 412.

[17] *Kelly*, 336 F.3d at 821. Plaintiffs' citation to *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998), is inapposite. (Opp. 24.) That case addressed radio programs that, unlike individual photographs, are readily susceptible to excerption.

[18] *See, e.g., Lamb v. Starks*, 949 F. Supp. 753, 757 (N.D. Cal. 1996) (fourth factor favors fair use absent "concrete plans" to market the work).

PROOF OF SERVICE

***Four Navy Seals and Jane Doe v. Associated Press, et al.,***
Case No. 05 CV0555 JM (JMA)

I, Pat Kemper, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

On April 29, 2005, I served the following:

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND TO STRIKE**

**RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF SETH HETTENA**

**DECLARATION OF TRACY GITNICK**

**DECLARATION OF SETH D. BERLIN IN SUPPORT OF MOTION TO STRIKE [RULE 12(B)(6) AND C.C.P. § 425.16]**

on the interested parties in this action by:

______ **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

______ **OVERNIGHT MAIL:** I sent a copy via overnight mail, Airbill No. ________________.

______ **OVERNIGHT COURIER SERVICE:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and caused such envelope(s) to be delivered via ________________.

__*__ **HAND DELIVERY:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and delivered it to CalExpress for personal service.

______ **FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s) indicated below. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine.

***Four Navy Seals and Jane Doe v. Associated Press, et al.,***
Case No. 05 CV0555 JM (JMA)

James W. Huston, Esq.
Morrison & Foerster LLP
3811 Valley Centre Drive, Suite 500
San Diego, CA 92130
*Telephone: 858.720.5100*
*Facsimile: 858.720.5125*
***Attorneys for Plaintiffs***

______ **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*_____ **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at San Diego, California on April 29, 2005.

[signature]
PAT KEMPER

2055719.1